### PRESLEY *v.* STATE OF MARYLAND

[No. 313, September Term, 1969.]

*Decided April 8, 1970.*

592

The cause was argued before HAMMOND, C. J., and McWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Thomas W. Jamison, III,* for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City, Peter D. Ward* and *Howard L. Cardin, Assistant State's Attorneys for Baltimore City;* and *James A. Wise, State's Attorney for Caroline County,* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

In this case we granted certiorari to the Court of Special Appeals to pass on the contention of James Leslie Presley that in his trial for rape in the Circuit Court for Caroline County the instructions to the jury of Judge DeWeese Carter as to the penalties for rape were prejudicially erroneous. Full consideration of the record and

of the arguments, written and forensic, for Presley and for the State has convinced us that in *Presley v. State,* 6 Md. App. 419, the Court of Special Appeals did not err in rejecting that contention.

Presley was first convicted by a jury in Baltimore of the atrocious and hideous crime of forcible rape of an eleven-year-old girl in 1960, and the judgment and sentence of death was affirmed in *Presley v. State,* 224 Md. 550. A second trial, ordered in 1964 by the United States District Court for the District of Maryland in *Presley v. Pepersack,* 228 F. Supp. 95, was held in Harford County and resulted in a jury's finding of guilty, followed by a sentence of life imprisonment. After the decision in *Schowgurow v. State,* 240 Md. 121, Presley elected to have a third trial, which was held in Caroline County before Judge Carter and a jury. After the third jury verdict of guilty, Judge Carter imposed a life sentence.

Code (1967 Repl. Vol.), Art. 27, § 461, provides that every person convicted of rape shall at the discretion of the court suffer death, life imprisonment "or undergo a confinement in the penitentiary for not less than eighteen months nor more than twenty-one years."

Section 463 of Art. 27 provides that any jury finding a person guilty of rape may add to their verdict the words "without capital punishment," and in such event "the sentence of the court shall not exceed twenty years in the penitentiary."

Presley's primary complaint is that Judge Carter told the jury that under recent decisions of the Federal Court interpreting the Constitution of the United States (undoubtedly *Patton v. North Carolina* (4th Cir.), 381 F. 2d 636, *cert. den.* 390 U. S. 905, 19 L.Ed.2d 871), the court could not impose the death penalty [1] and this had the effect, as a practical matter, of inducing the jury to

---

1. Presumably this was because Judge Dyer had imposed a life sentence at the second trial and Judge Carter felt Patton v. North Carolina (which held that after a subsequent trial a state court could not constitutionally impose a sentence greater than had been imposed at the prior trial) was binding on him.

ignore § 463 of Art. 27, with its twenty-year limit, and to bring in a general verdict of guilty under § 461 which permitted a life sentence. Says Presley:

> "Had the jury not been made aware that the trial judge considered himself legally inhibited from resort to a death sentence in this case, it might very well have returned a verdict of guilty under § 463, adding the words 'without capital punishment,' and thereby limiting the maximum penalty to twenty years."

Presley's assumption that if the jury had thought he could receive the death penalty it might "very well have" qualified its general verdict is mere speculation and improbable speculation at that. The two prior jury convictions without qualification and the revolting nature of the crime lead to the much more probable assumption that the jury would have returned the same verdict if Judge Carter had made no reference to what he supposed was the barrier to the imposition of the death penalty.

It is true that Judge Carter's impression of the effect of *Patton* was wrong for several reasons. (1) The decisions of Federal courts lower than the Supreme Court in cases arising in other States are not actually binding on the courts of Maryland; (2) in *Moon v. State*, 250 Md. 468, this Court reached a result contrary to *Patton*; and (3) in *North Carolina v. Pearce*, 395 U. S. 711, 723, 23 L.Ed.2d 656, 668, the Court held:

> "that neither the double jeopardy provision nor The Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction. A trial judge is not constitutionally precluded, in other words, from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.' "

The Court next considered the Due Process Clause, and held that (at p. 725-26 of 395 U. S., p. 669-70 of 23 L.Ed.2d)

"Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

"In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal."

That Judge Carter's advice as to his inability to impose the death penalty was, or may have been, erroneous is not decisive. If the charge in its entirety fairly and accurately stated the law applicable to the facts in the case, the appellant cannot be heard to say that he was prejudiced. In determining whether the instructions as a whole fairly and accurately stated the law, their language will be given a reasonable rather than a strained and unreasonable construction and all parts will be, if fairly and reasonably possible, read and considered together. *Kirkorian v. State*, 233 Md. 324, 328, *cert. den.* 377 U. S. 945,

12 L.Ed.2d 308; *Brown v. State*, 225 Md. 610, 618; *Graef v. State*, 1 Md. App. 161, 171-172; *Roberts v. State*, 4 Md. App. 209, 213-214.

In support of his contention that Judge Carter's charge did not meet the requisite standards Presley says:

> "In explaining the various forms of verdict the jury might bring in the court included guilty without capital punishment. After properly outlining the sentence which could be imposed under such a verdict, the court then proceeded to confuse the explanation completely by adding, 'or if you find him *not guilty*, you may bring in the other form of verdict, a finding of guilty without any conditions attached to it.' The next sentence in the instructions contains an equally curious statement: 'Now, the law, as passed by the legislature in Maryland, under that general verdict of guilty without any conditions attached to it, *it is for the jury* to prescribe a penalty for the person so convicted.' [Emphasis added.]
>
> "It was in this chaotic context that the trial judge referred to recent decisions of the Federal Court which would prohibit him from imposing the death penalty under a general verdict of guilty."

It is difficult to escape the conviction that the transcribing stenographer misplaced the word "not" in the two quotations and that the judge actually said: "* * * if you find him guilty, you may bring in the other form of verdict, a finding of guilty without any conditions attached to it," and actually said "* * * under that general verdict of guilty without any conditions attached to it, it is not for the jury to prescribe a penalty * * *."

But assuming the judge said just what the record shows him to have said, we read the charge as a whole to have fairly and accurately set out the applicable law and that there is no reasonable probability that the jury may have

been misled by it. Judge Carter advised the jury that it was the sole judge of the law and the facts and that his instructions were advisory only and that the jury could find Presley not guilty. He further told the jury that ordinarily it has no connection with the sentence imposed, its whole function being "to determine the guilt of the accused or the innocence of the accused, in determining whether the defendant" is guilty or not, and that ordinarily this was the end of the jury's function,

"but * * * in * * * a case of this nature, the legislators have said, if you make a finding of guilty, that finding may be shown by one of two forms of verdict.

"If you bring in a verdict of guilty without capital punishment, your next condition to that is the penalty or sentence which could be imposed under that verdict by the Court, would be imprisonment in a penitentiary not more than twenty years, that is, not more than, but up to twenty years, or if you find him not guilty, you may bring in the other form of verdict, a finding of guilty without any conditions attached to it.

"Now, the law, as passed by the legislature in Maryland, under that general verdict of guilty without any conditions attached to it, it is for the jury to prescribe a penalty for the person so convicted. He may be sentenced by the Court to confinement in the penitentiary for not less than eighteen months nor more than twenty-one years or to imprisonment in the penitentiary for a period of his natural life or the death penalty may be imposed. Any one of those three forms of penalty might be meted out by the Court under a general verdict of guilty: that is, imprisonment up to twenty-one years or imprisonment for life or the death penalty.

"Under recent decisions of the Federal Court

interpreting the Constitution of the United States, they have made some rulings which, when applied to the history of this case, would prohibit this Court from imposing the death penalty under this general law and under a general verdict of guilty in this case. We, therefore, say to the jury in an advisory instruction, here, on the law, it is our opinion that, if you find a general verdict of guilty without the condition, that is, without capital punishment annexed to it, the Court, then, will be called upon to exercise their discretion under this law of imprisonment for no less than eighteen months nor more than twenty-one years or imposing a life sentence in the Court's discretion.

"Imprisonment up to twenty-one years or life imprisonment under a general verdict of guilty or under a verdict of guilty without capital punishment, the maximum imprisonment would be not more than twenty years.

"I mention these penalties because the jury is called upon, in the event of a finding of guilty, to decide, in their discretion, which of these forms of verdicts under a guilty finding, they determined to bring in. I say to you that it is the Court's opinion that in the light of these recent Federal decisions, when applied to the history of this case, we would not be permitted to impose the death penalty under a general verdict of guilty. The maximum would be as I have related, which of those two verdicts the jury brings in."

Thus the jury could not have failed to realize—by instructions just before and just after the language in which was inserted and then omitted the misplaced "not," as well as subsequent repetitions—that it could find Presley not guilty or guilty, that if it found guilt it could limit the imprisonment the court could impose to not

more than twenty years by adding the words "without capital punishment" to its verdict, that if it did not wish to limit the length of the sentence it could bring in a verdict of guilty without adding qualifying words and in such case the sentence could be not less than eighteen months and from eighteen months to twenty-one years or life imprisonment, and that the jury must decide which of two guilty verdicts it would return, if it determined Presley to be guilty, before the court could impose a proper penalty.

This was a fair and accurate charge. It is proper for the judge to instruct as to the penalty which may follow a specified verdict and in a rape case to state all the possible penalties. *Jones v. State,* 182 Md. 653; *Domneys v. Warden,* 232 Md. 659, *cert. den.* 377 U. S. 949, 12 L.Ed.2d 311; *Shoemaker v. State,* 228 Md. 462, 474.

Presley's theory that the court's advice to the jury that the death penalty could not be imposed induced a general rather than a limited verdict not only is, as we noted before, improbable but has been found unacceptable by the Courts of this and other States. A similar argument was rejected, on sound reasoning we think, in *Reeves v. State,* 3 Md. App. 195. Other courts have similarly rejected the argument. See *Halko v. State* (Del.), 175 A. 2d 42, 45-46; *State v. Worthy* (S. C.), 123 S.E.2d 835, 844-845; *Troupe v. State* (D.Ct.App.Fla.), 130 So. 2d 91, 95-96.

We find no prejudicial error in the court's charge and will not disturb the affirmance of Presley's judgment and sentence by the Court of Special Appeals.

*Judgment affirmed.*