**In the Interest of A.W., a Minor Child.**

**No. 16236.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 1989.

Decided April 12, 1989.

John E. Haak, Asst. Atty. Gen., Pierre, for appellee State of S.D., Rogert A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

Jane L. Wipf of Lynn, Jackson, Shultz & Lebrun, Rapid City, for appellant minor child.

MILLER, Justice.

In this appeal, we affirm an adjudication of juvenile delinquency and hold that (1) there was sufficient evidence to sustain the adjudication; (2) the evidence established beyond a reasonable doubt that the offenses were committed; and (3) the trial court did not err in denying the juvenile's motion to suppress statements of two eyewitnesses.

## FACTS

In October 1987, A.W. and three juvenile acquaintances (D.C., A. and B.) were "driving around" in Rapid City, South Dakota. The group went to the parking lot at Stevens High School because D.C. said he "needed a fuzz buster." D.C. and A.W. got out of the car and were gone for ten or fifteen minutes. A. and B. remained in the car. A. testified that he saw D.C. break a window of a pickup and heard other windows being smashed, but never observed A.W.'s activities after leaving the car. B. corroborated A.'s testimony. When D.C. and A.W. returned, D.C. was carrying a gearshift knob. A.W. was not carrying anything.

The group then drove to another parking lot near Stevens High School where all four got out of the car. A.W. and D.C. again left (this time each carrying a baseball bat) while A. and B. waited in the parking lot. A. testified that he did not hear any windows being smashed, but did hear the slamming of doors. Again, B. corroborated A.'s testimony. A.W. and D.C. returned within five or ten minutes. D.C. was carrying a gym bag, some clothes and a calculator. Both A.W. and D.C. were carrying baseball bats. The group then got back into their car and drove to A.W.'s house, where they examined the various items which had been taken from the cars.

After an investigation, State filed a petition alleging that A.W. was a delinquent child (alleging twelve counts of aiding and abetting in the commission of a third-degree burglary).* At A.W.'s adjudicatory hearing, eleven persons testified concerning damage sustained to their vehicles and the theft of various items therefrom on the night in question. In all cases, the eleven witnesses identified their vehicles by make, model, year, and/or color. However, several owners could not remember their license plate numbers unless they were prompted by State.

At the close of the adjudicatory hearing, the court found that the in-court testimony of A. and B. indicated that A.W. had carried a baseball bat on one of the occasions

---

* Third-degree burglary is defined by SDCL 22–32–8, as follows:

Any person who enters or remains in an unoccupied structure, with intent to commit any crime therein, is guilty of third degree burglary. Third degree burglary is a Class 4 felony.

when the juveniles were in the parking lot, and that A. and B. heard the smashing of windows. The court also found A.W. had committed the crime of aiding and abetting in the commission of a third-degree burglary in eleven of the twelve counts and adjudicated him a delinquent child.

A.W. moved for a judgment notwithstanding the verdict (which the court properly treated as a motion to reconsider), asserting that his mere presence was not enough to convict him of aiding and abetting in the commission of a third-degree burglary. The court denied the motion.

## DECISION

### I

WHETHER THE TRIAL COURT ERRED IN DENYING A.W.'S MOTION FOR DIRECTED VERDICT, ACQUITTAL AND RECONSIDERATION BECAUSE THE EVIDENCE WAS INSUFFICIENT TO JUSTIFY AN ADJUDICATION OF DELINQUENCY.

 Our standard of review is whether the State proved each element of the offense beyond a reasonable doubt. *Matter of T.J.E.*, 426 N.W.2d 23 (S.D.1988); *Matter of S.F.H.R.*, 292 N.W.2d 802 (S.D. 1980); SDCL 26-8-22.5. On review, we will accept that evidence and the most favorable inferences which can be fairly drawn therefrom which will support the verdict. *S.F.H.R., supra.*

 We have previously held that aiding and abetting requires something more than "mere presence." *See State v. Caylor*, 434 N.W.2d 582 (S.D.1989); *see also State v. Ashker*, 412 N.W.2d 97 (S.D.1987); *and State v. McCreary*, 82 S.D. 111, 142 N.W. 2d 240 (1966). However, mere presence may be a circumstance which tends to support a finding that a person is a participant and with other circumstances may establish his guilt for the offense. *Caylor, supra; Ashker, supra. See also State v. Schafer*, 297 N.W.2d 473 (S.D.1980).

 From the record, it appears that the court based its holding that A.W. had aided and abetted in the burglary upon (1) the testimony of A. and B., who stated that A.W. carried a baseball bat on at least one of the two occasions, (2) on A. and B.'s testimony that they heard the smashing of windows; (3) on the car owners' testimony of broken windows; and (4) upon A. and B.'s testimony that A.W. and D.C. returned to the car with items that the car owners testified were missing from their vehicles. We believe that the evidence which was introduced at the trial, and the inferences which can be drawn therefrom, clearly show that A.W. was more than a passive bystander and that he knowingly assisted in the commission of the burglaries. The fact that several cars had windows broken on both the driver and passenger sides further buttresses our conclusion. We therefore find that the evidence was sufficient and that substantial evidence exists which would justify the court's denial of A.W.'s motions for a directed verdict, acquittal, and reconsideration. *See Ashker, supra.*

### II

WHETHER THE TRIAL COURT ERRED IN DENYING A.W.'S MOTIONS FOR DIRECTED VERDICT, ACQUITTAL AND RECONSIDERATION BECAUSE STATE HAD FAILED TO PROVE ITS CASE BEYOND A REASONABLE DOUBT DUE TO A VARIANCE BETWEEN PLEADING AND PROOF.

 We have never specifically explained the proper test for determining the sufficiency of a delinquency petition. Given the fact that it is similar in content to the necessary allegations of a criminal information, we hold that the test of the sufficiency of a petition of delinquency is whether it apprises a juvenile with reasonable certainty of the nature of the accusation against him so that he may prepare his defense and plead the judgment as a bar to any subsequent prosecution for the same offense. SDCL 26-8-10 through -12; *see also State v. Blue Fox Bar, Inc.*, 80 S.D. 565, 128 N.W.2d 561 (1964); *and State v. Heisinger*, 252 N.W.2d 899 (S.D.1977). A.W. maintains that the damaged vehicles were not sufficiently identified during his hearing. However, he does not cite any authority which stands for the proposition

that this insufficiency would allow a subsequent prosecution for the same offense. On this basis, we conclude that A.W.'s argument must fail. *See* SDCL 15–26A–60(6); *Corbly v. Matheson,* 335 N.W.2d 347 (S.D.1983); *and State v. Davis,* 401 N.W.2d 721 (S.D.1987). Further, six of the eleven vehicles were sufficiently identified by description and license plate numbers while the remaining five vehicles were sufficiently identified by description alone. We believe that this does not produce a fatal variance between the pleadings and proof. While the vehicles may have been identified using different characteristics, *i.e.,* by make and model rather than license plate numbers, we find that all the vehicles were identified by the owners at trial and in the petition.

### III

WHETHER THE TRIAL COURT ERRED IN DENYING A.W.'S MOTION TO SUPPRESS THE STATEMENTS OF TWO EYEWITNESSES.

■ A.W. next argues that the statements of A. and B. should have been suppressed. After the burglaries, the police, as part of their investigation, questioned D.C., who implicated A.W. The police then interviewed A.W. to ascertain his involvement. A.W., who had not been given the *Miranda* warnings during his interview, made numerous incriminating statements and named A. and B. as having been with him at the time of the burglaries. As a result of the failure of the police to warn A.W., the trial court properly suppressed the introduction of A.W.'s statements. However, it denied A.W.'s motion to suppress the statements of A. and B., which were obtained after the police interviewed A.W. without the benefit of the *Miranda* warning. We note, however, that State did not offer or refer to the statements made to the police by A. and B. Instead, A. and B. personally appeared and gave live testimony at the hearing *without objection from A.W.*

This issue has been addressed by the United States Supreme Court in *United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978). In *Ceccolini,* the Court held that

the exclusionary rule should be invoked with much greater reluctance where the claim is based on a causal relationship between a constitutional violation and the discovery of a live witness than when a similar claim is advanced to support the suppression of an inanimate object.

435 U.S. at 280, 98 S.Ct. at 1062, 55 L.Ed.2d at 279. In analyzing the difference between live witnesses and inanimate objects, the Court noted that witnesses can, and often do, come forward and offer evidence entirely of their own volition. The Court further stated that the exclusion of a potential live witness

would perpetually disable a witness from testifying about relevant and material facts, regardless of how unrelated such testimony might be to the purpose of the originally illegal search or the evidence discovered thereby. Rules which disqualify knowledgeable witnesses from testifying at trial are, in the words of Professor McCormick, 'serious obstructions to the ascertainment of truth[.]'

435 U.S. at 277, 98 S.Ct. at 1061, 55 L.Ed.2d at 277–78 (quoting C. McCormick, *Law of Evidence,* § 71 (1954)).

The rationale of *Ceccolini* was applied in *United States v. White,* 746 F.2d 426 (8th Cir.1984), *cert. denied* 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985). In that case, wherein the police obtained information from an illegal wiretap, the court of appeals concluded that the illegality which led to the discovery of a live witness very often will not play any meaningful part in the witness' willingness to testify. *Id.,* at 428–29 (citing *Ceccolini* ). This case, like *Ceccolini* and *White,* involves the discovery of live witnesses subsequent to illegal activity on the part of the police. Following *Ceccolini* and *White,* we hold that the in-court testimony of A. and B. is admissible and that the trial court did not err in allowing its introduction.

Affirmed.

All the Justices concur.